IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN LAUF, *et al.*, <br> *Plaintiffs* | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| ALLSTATE INSURANCE COMPANY, <br> *Defendant* | : <br> : <br> : | No. 22-65 |

## **MEMORANDUM**

PRATTER, J.                                                                APRIL 1, 2022

Brian Lauf and Rebecca Marhoefer agreed to resolve their disputed claims against Allstate through binding arbitration with an agreed-upon high and low range. After both parties executed the arbitration agreement but before the arbitration hearing, Allstate offered to settle the case within the agreed-upon range established in the arbitration agreement. Now Mr. Lauf and Ms. Marhoefer claim that Allstate breached the terms of their insurance contract and that this "low-ball" offer was made in bad faith. But, as Allstate rightly argues, both claims require significantly more than what Mr. Lauf and Ms. Marhoefer have alleged. As a result, the Court grants Allstate's motion to dismiss.

### BACKGROUND

On September 26, 2019, Ms. Marhoefer was a passenger in the car Mr. Lauf was driving when they were involved in a rear-end accident in Philadelphia. At the time of that accident, Mr. Lauf and Ms. Marhoefer were covered by an Allstate automobile insurance policy that provided for underinsured motorist benefits in the amount of $100,000 per person and $300,000 per accident. The driver of the other vehicle was covered by an insurance policy with liability limits of $15,000 per person and $30,000 per occurrence. Mr. Lauf and Ms. Marhoefer recovered the

1

entirety of the $30,000 from the other driver's policy, $15,000 each, and also filed a claim with Allstate to recover under their underinsured motorist coverage.

Mr. Lauf and Ms. Marhoefer subsequently filed suit against Allstate in the Court of Common Pleas. Doc. No. 10-8. The parties, however, agreed to resolve this dispute through binding arbitration and the decision of a sole neutral arbitrator. Doc. No. 10-7, at 1. As especially relevant to the present suit, the parties signed an agreement establishing the terms of that binding arbitration ("Arbitration Agreement"). Doc. No. 10-7. Among other terms, the Arbitration Agreement set predetermined high and low ranges for both Mr. Lauf's and Ms. Marhoefer's damages. Mr. Lauf would receive at least $5,000 and at most $65,000 from Allstate while Ms. Marhoefer would receive at least $5,000 and at most $85,000 from Allstate. Doc. No. 10-7, at 1. The low of $5,000 for each was in addition to the $15,000 Mr. Lauf and Ms. Marhoefer each already received from the other driver's policy, meaning they would each receive a total of at least $20,000. *Id.* at 2. Allstate agreed to prepay the first $5,000 within 30 days of the parties executing the Arbitration Agreement. *Id.* at 1. Mr. Lauf and Ms. Marhoefer agree that they each received this payment.

After the parties signed the Arbitration Agreement but before the actual arbitration hearing, Allstate offered an additional $5,000 to each Mr. Lauf and Ms. Marhoefer in exchange for settling the dispute and avoiding the arbitration hearing. Mr. Lauf and Ms. Marhoefer rejected the offer and proceeded to the arbitration hearing. The arbitrator awarded Mr. Lauf $50,000 and Ms. Marhoefer $87,671.42. When reduced by the $15,000 each had already received from the other driver's policy, Mr. Lauf would receive $35,000 from Allstate (minus the $5,000 Allstate had paid up front) and Ms. Marhoefer would receive $62,671.42 (minus the $5,000 Allstate had paid up

front). Thus, the awards to both Mr. Lauf and Ms. Marhoefer fell within the range established by the Arbitration Agreement.

In spite of that outcome, Mr. Lauf and Ms. Marhoefer subsequently sued Allstate, and Allstate removed the case to federal court. Once in federal court, Mr. Lauf and Ms. Marhoefer filed an amended complaint alleging two claims against Allstate: breach of contract (the insurance contract) and bad faith. Allstate moves to dismiss their complaint for failure to state a claim. Fed. R. Civ. P 12(b)(6).

## LEGAL STANDARD

In a complaint, a plaintiff must set out "a legally cognizable right of action" and "enough facts" to make that cause of action "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted). On a motion to dismiss for failure to state a claim, the Court takes all well-pleaded facts as true and draws all inferences in the light most favorable to the plaintiff. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). The Court does not decide whether the plaintiff's story *is* what happened, just whether it plausibly *could have* happened. *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009). In doing so, the Court considers the complaint and documents attached to it or "integral" to it, like a contract in a breach-of-contract claim. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). "What is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).[1]

---

[1] Mr. Lauf and Ms. Marhoefer have attached the Arbitration Agreement, a copy of their complaint in the first suit before the Court of Common Pleas, a letter from Allstate's counsel, and an email from Allstate's counsel. Docs. No. 10-7, 10-8, 10-9, 10-10. Because the claims in the complaint are "based" on these extrinsic documents, the Court considers them at this stage.

3

## DISCUSSION

Allstate moves to dismiss Mr. Lauf's and Ms. Marhoefer's complaint in its entirety, arguing that they have failed to allege a cognizable claim for breach of contract and that their bad faith claim is plainly prohibited by the terms of the Arbitration Agreement and also legally deficient. Mr. Lauf and Ms. Marhoefer oppose Allstate's motion. The Court concludes that Mr. Lauf and Ms. Marhoefer have failed to adequately plead both claims. Thus, the Court grants Allstate's motion to dismiss.

### I. Mr. Lauf and Ms. Marhoefer Failed to Adequately Plead Any Breach of Their Insurance Contract

Mr. Lauf and Ms. Marhoefer first claim that Allstate breached the terms of their insurance contract. This is based on the allegations that Allstate was contractually obligated to investigate their claims and make a reasonable offer for their suffered injuries, which Mr. Lauf and Ms. Marhoefer allege Allstate failed to do. Doc. No. 5, Am. Compl. ¶¶ 34–36. In addition, Mr. Lauf and Ms. Marhoefer allege that Allstate violated the implied common law duty of good faith and fair dealing. *Id.* ¶ 37.

Allstate moves to dismiss this breach of contract claim for two reasons: (1) Mr. Lauf's and Ms. Marhoefer's claim is legally infirm because it fails to identify any clause in the insurance contract that Allstate breached and (2) Mr. Lauf's and Ms. Marhoefer's claim is legally infirm because Mr. Lauf and Ms. Marhoefer have suffered no damages.

"To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege three things: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008); *see also Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

Allstate concedes that a contract existed between the parties. Doc. No. 9, at 18. Nevertheless, it is difficult for the Court to evaluate whether Allstate violated any of the insurance contract's "essential terms" because Mr. Lauf and Ms. Marhoefer did not attach the contract to their complaint or briefing. While certainly "integral" to their breach of contract claim, *Schmidt*, 770 F.3d at 249, without it, the Court is left with only the allegations in Mr. Lauf's and Ms. Marhoefer's complaint.

Making no more than conclusory statements, Mr. Lauf and Ms. Marhoefer allege that Allstate breached the contract because it failed to investigate plaintiffs' claims and failed to make a reasonable offer. They do not allege any facts that should have been examined but only that "Allstate[] had more than sufficient time and opportunity to fully investigate Plaintiff's UIM claims but failed to do so" and that "[t]he investigation . . . was conducted in a dilatory manner." Doc. No. 5, Am. Compl. ¶¶ 25, 27. But this does not set out "enough facts," or any facts for that matter, to make the claim "plausible on its face." *Twombly*, 550 U.S. at 570. These are merely "conclusory statements" which "do not suffice." *Iqbal*, 556 U.S. at 678.

Likewise, Mr. Lauf and Ms. Marhoefer's claim that Allstate failed to make a reasonable offer does not plead sufficient facts to survive a motion to dismiss. They allege that "Allstate made one arbitrary, low-ball offer of $5,000 for each Plaintiff to resolve their claims." Doc. No. 5, Am Compl. ¶ 21. This seems to be tied into another claim, namely, that the "low-ball" $5,000 offer was "in breach of . . .[the] duty of good faith and fair dealing." *Id.* ¶ 23. Again, however, these are conclusory statements. Mr. Lauf and Ms. Marhoefer do not explain *how* this breached Allstate's contractual obligations with any supporting factual allegations or even by referring to the contract provision Allstate supposedly breached. Thus, again, Mr. Lauf and Ms. Marhoefer failed to state sufficient facts to make this claim plausible on its face.

Without any plausible claim for breach of contract, Mr. Lauf's and Ms. Marhoefer's claim for breach of the covenant of good faith and fair dealing must also fail. *Temple Univ. Hosp., Inc. v. Grp. Health, Inc.*, No. 05-cv-102, 2006 WL 146426, at *6 (E.D. Pa. Jan. 12, 2006); *accord Blue Mtn. Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 400–01 (E.D. Pa. 2002).

Mr. Lauf and Ms. Marhoefer have also failed to plead facts supporting their claims that they suffered damages. Mr. Lauf and Ms. Marhoefer agreed to proceed with binding arbitration rather than litigate their claim and the arbitrator awarded them $35,000 and $62,671.42, respectively.[2] Court have repeatedly held that "[a]n action for breach of an insurance contract does not lie when the policy proceeds have been paid." *Oehlmann v. Metro. Life Ins. Co.*, 644 F. Supp. 2d 521, 533 (M.D. Pa. 2007); *accord Stanford v. Nat'l. Grange Ins. Co.*, 64 F. Supp. 3d 649, 658 (E.D. Pa. 2014); *Mirarchi v. Seneca Specialty Ins. Co.*, No. 10-cv-3617, 2013 WL 1187065, at *11 (E.D. Pa. Mar. 22, 2013). Here, Mr. Lauf and Ms. Marhoefer were paid proceeds within the terms of their insurance contract. Because the proceeds were paid, there are no damages and can be no actionable claim for breach of contract.[3]

Therefore, the Court grants Allstate's motion to dismiss Mr. Lauf and Ms. Marhoefer's breach of contract claim without prejudice. It may be that they will attempt to replead this with more specific factual allegations or perhaps a different legal theory.

---

[2] From what the Court can discern, Mr. Lauf's and Ms. Marhoefer's breach of contract claim does not allege any facts that they have suffered any damages as a result of Allstate's alleged breach. Their claim seems to be that they theoretically *could* have recovered up to $150,000 per person under their policy if they continued their lawsuit but agreed, instead, to binding arbitration (with the attendant benefits that they avoided the risk of no recovery and would recover *something* and quickly, without an appellate delay or risk) and are now experiencing "signer's remorse." But this does not establish that Mr. Lauf or Ms. Marhoefer suffered damages as a result of an alleged breach.

[3] The cited cases all addressed factual scenarios in which the plaintiff recovered the *full* amount available under the policy. Thus, perhaps there is an argument (not that Mr. Lauf or Ms. Marhoefer make it) that those cases are distinguishable. But the Court need not resolve this issue because, as already noted, Mr. Lauf's and Ms. Marhoefer's breach of contract claim fails to meet the threshold pleading requirement for another reason. The Court offers no view on whether such an effort could or would be successful.

### II. Mr. Lauf and Ms. Marhoefer Failed to Adequately Plead a Claim for Bad Faith

Next, Mr. Lauf and Ms. Marhoefer assert a claim of bad faith against Allstate. This is based on allegations that Allstate failed to make "a good faith investigation into the facts of plaintiffs' injury claims" and that Allstate "offered each plaintiff an arbitrary $5,000, although each of their injuries were significantly different from one another." Doc. No. 5, Am. Compl. ¶¶ 42–43. The brunt of Mr. Lauf's and Ms. Marhoefer's bad faith claim regards the additional $5,000 Allstate offered after the Arbitration Agreement was executed but before the arbitration hearing. Mr. Lauf and Ms. Marhoefer allege that Allstate's "arbitrary 'low-ball' offer to the plaintiffs bore no reasonable relationship to the plaintiffs['] actual damages" and that Allstate "never increased their offer to plaintiffs." *Id.* ¶¶ 48, 54. Further, Mr. Lauf and Ms. Marhoefer allege that after the arbitration hearing (at which they were awarded additional damages), Allstate "demanded that the plaintiffs execute a full and final release of all claims, including a future claim for bad faith." *Id.* ¶ 56. They claim that Allstate's attempt to "coerce plaintiffs to release any potential bad faith claim before paying the settlement proceeds was bad faith." *Id.* ¶ 57.

Allstate moves to dismiss this claim as well, making two basic arguments. First, Allstate argues that the plain terms of the Arbitration Agreement foreclose Mr. Lauf's and Ms. Marhoefer's bad faith claim because, as part of the Arbitration Agreement, they agreed to withdraw all bad faith claims. Second, regardless of the terms of the Arbitration Agreement, Allstate argues that Mr. Lauf and Ms. Marhoefer have failed to allege a plausible bad faith claim.

#### A. The Terms of the Arbitration Agreement Resolve Some, but Not all, of Mr. Lauf's and Ms. Marhoefer's Allegations

Allstate argues that Mr. Lauf's and Ms. Marhoefer's bad faith claim is foreclosed by the terms of the Arbitration Agreement. Arbitration "is a question of contract and [] Pennsylvania law should be applied 'to interpret the parties' agreement.'" *Alder Run Land, LP v. Ne. Nat. Energy*

7

*LLC*, 622 F. App'x 164, 166 (3d Cir. 2015) (quoting *Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1114 (Pa. Super. Ct. 2007)). Under Pennsylvania contract law, "[a] contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009) (internal quotation marks omitted). "[W]hile ambiguous writings are interpreted by the finder of fact, unambiguous ones are construed by the court as a matter of law." *Id.*

Allstate is right in part. The terms of the Arbitration Agreement resolve some of Mr. Lauf's and Ms. Marhoefer's allegations, but not all of them. For example, Mr. Lauf and Ms. Marhoefer allege that Allstate acted in bad faith to "coerce the plaintiffs to release any potential bad faith claim before paying the settlement proceeds" and that Allstate "demanded that the plaintiffs execute a full and final release of all claims, including a future claim for bad faith." Doc. No. 5, Am Compl. ¶¶ 56–57. But the Arbitration Agreement explicitly stated that "[o]nce the neutral arbitrator's decision is rendered [counsel for Allstate] will forward a general release to [counsel for plaintiffs] for signature by [Mr. Lauf and Ms. Marhoefer] for the molded ADR award." Doc. No. 10-7, at 2. Thus, this allegation fails under the plain terms of the Arbitration Agreement.

Allstate's argument that Mr. Lauf and Ms. Marhoefer agreed to drop any and all bad faith claims against it as part of the Arbitration Agreement, however, cannot be resolved based on the plain terms of the Arbitration Agreement alone. In relevant part, the Arbitration Agreement states that the parties "agreed that [Mr. Lauf and Ms. Marhoefer] will withdraw any claims for bad faith or extra contractual damages . . . with prejudice. The sole neutral arbitrator will decide the amount of any damages to be awarded to your respective clients." Doc. No. 10-7, at 1. In addition, the Arbitration Agreement stated that there would be "no effort to file any type of claim for bad faith or extra contractual damages in the event that the pre-molded ADR award exceeds the high limits

as to either plaintiff." *Id.* at 2. Allstate argues that this language means Mr. Lauf and Ms. Marhoefer could not file any *future* claim for bad faith as well. The Court is not so convinced.

Neither clause that Allstate points to is as airtight as it argues. First, the clause stating that Mr. Lauf and Ms. Marhoefer "will withdraw any claims for bad faith or extra contractual damages" plainly contemplates claims existing *at the time* of the Arbitration Agreement. It makes no mention of any *future* claims. Second, the clause stating that Mr. Lauf and Ms. Marhoefer will make "no effort to file any type of claim for bad faith or extra contractual damages *in the event that the pre-molded ADR award exceeds the high limits as to either plaintiff*" is conditional. It does not state that Mr. Lauf and Ms. Marhoefer will *never* file any bad faith claim, it states that they will make "no effort" to do so *if* the ADR award exceeded the agreed-upon high limit of the arbitration. And that condition precedent did not happen here; neither Mr. Lauf's nor Ms. Marhoefer's award at ADR exceeded the agreed-upon high. Third, the clause stating that "[t]he sole neutral arbitrator will decide the amount of any damages to be awarded to your respective clients" does not clearly foreclose future claims. True, it could be read to mean that "any damages" encompass any and all future claims, but it could also just mean "any damages" related to their insurance claim with Allstate, bad faith claims not included. Thus, the Court cannot dismiss the claim based on this language alone. If Allstate meant to foreclose all past, present, and future suits for bad faith stemming from a claim under an insurance policy, it should have ensured the Arbitration Agreement—a contract—said so. Thus, the Court denies Allstate's motion to dismiss on this basis.

> B. Separate from the Arbitration Agreement, Mr. Lauf's and Ms. Marhoefer's Allegations Do Not State a Viable Claim for Bad Faith

Even though the Arbitration Agreement alone does not foreclose all of Mr. Lauf's and Ms. Marhoefer's claims, they have failed to state a plausible claim for bad faith based on the facts asserted. To state a claim for insurance bad faith, a plaintiff "must demonstrate, by clear and

9

convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017); *accord Berg v. Nationwide Mut. Ins. Co., Inc.*, 235 A.3d 1223, 1245–46 (Pa. 2020). "[A]n insurer's conduct need not be fraudulent, but mere negligence or bad judgment will not suffice." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 598 (E.D. Pa. 2010). "To support a finding of bad faith, 'the plaintiff must show that the insurer breached its duty of good faith through some motive of self-interest or ill will.'" *Id.* (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)).

Most pertinent here, "[t]o state a bad faith claim, an insured 'must do more than call [the insurer's] offers 'low-ball.'" *Brown v. LM Gen. Ins. Co., et al.*, No. 21-cv-2134, 2021 WL 3809075, at *3 (E.D. Pa. Aug. 26, 2021) (quoting *Canfield v. Amica Mut. Ins. Co.*, No. 20-cv-2794, 2020 WL 5878261, at *4 (E.D. Pa. Oct. 2, 2020)). Courts have routinely recognized that similar allegations "suggest 'nothing more than a normal dispute between an insured and insurer.'" *Canfield*, 2020 WL 5878261, at *4 (quoting *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 785 (Pa. Super. Ct. 2009)).

Mr. Lauf and Ms. Marhoefer point the Court to *Seto v. State Farm Ins. Co.*, 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012), for the proposition that "offers which bear no reasonable relationship to an insured's actual losses can constitute bad faith." The *Seto* court clarified, however, that:

> For an insurance company to show that it had a reasonable basis, an insurance company is not required to demonstrate its investigation yielded the correct conclusion or even that its conclusion more likely than not was accurate. The insurance company also is not required to show the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion. Rather an insurance company simply must show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action.

10

*Id.* at 431 (quoting *Krisa v. Equitable Life Assurance Soc'y,* 113 F. Supp. 2d 694, 704 (M.D. Pa. 2000)).

By that standard, Allstate had a reasonable basis for its handling of Mr. Lauf's and Ms. Marhoefer's claim. Mr. Lauf, Ms. Marhoefer, and Allstate agreed to a binding arbitration with pre-set low and high parameters. Allstate paid both plaintiffs $5,000 as part of the Arbitration Agreement, bringing their net recovery to $20,000 each ($15,000 each from the other driver's policy plus $5,000 from Allstate). Allstate then offered to forego the arbitration hearing and settle the entire case for an *additional* $5,000, meaning each Mr. Lauf and Ms. Marhoefer would have recovered $25,000 total. Mr. Lauf and Ms. Marhoefer agree that Allstate "valu[ed] their cases at $25,000 each." Doc. No. 5, Am. Compl. ¶ 52. In other words, Allstate offered to settle the case for precisely the amount that Allstate valued the case. The Court understands that Mr. Lauf and Ms. Marhoefer valued the case higher (and, to be sure, they ultimately recovered more), but "[a] low, but reasonable offer, is simply not evidence of bad faith." *Seto,* 855 F. Supp. 2d at 432. Thus, plaintiffs have not proven any "low-ball" offer and certainly have not reached the threshold of alleging bad faith by clear and convincing evidence.

In sum, Mr. Lauf and Ms. Marhoefer's claim really boils down to alleging that Allstate dragged its feet in its investigation and failed to investigate their claims. *See, e.g.,* Doc. No. 5, Am Compl. ¶¶ 64(c), (d), (f), (g), (k), (l). To allege dilatory tactics and/or a failure to investigate, however, a plaintiff must put forth more than conclusory allegations. The plaintiff must include specific factual matter, such as "the number of months between [the] demand and settlement offer" or "describe the course of the parties' dealings." *Brown,* 2021 WL 3809075, at *3.

Here, the limited facts in the complaint related to this do not suggest any delay, and certainly not a delay reaching the level of "bad faith." The accident took place in September 2019.

Doc. No. 5, Am. Compl. ¶ 9. Mr. Lauf and Ms. Marhoefer do not state when they first made a claim under their insurance with Allstate. *See id.* ¶ 15. From what the Court can glean from the documents attached to Mr. Lauf's and Ms. Marhoefer's briefing, they filed suit in the Court of Common Pleas sometime in the fall of 2020. Doc. No. 10-8, at 1. The Arbitration Agreement is dated September 23, 2020. Doc. No. 10-7. Allstate offered the additional $5,000 to resolve the entire case on July 7, 2021. Doc. No. 10-9. The parties proceeded to the arbitration hearing, and the arbitrator awarded the above-described amounts on November 10, 2021. Doc. No. 5, Am. Compl. ¶ 26. Mr. Lauf and Ms. Marhoefer then (again) filed a complaint in the Court of Common Pleas on December 10, 2021. Doc. No. 1, at 6. To be sure, the wheels of justice grind slowly, but Mr. Lauf and Ms. Marhoefer have pled no facts to suggest that Allstate acted to deliberately slow the process, and certainly not to any level amounting to "bad faith."

Therefore, the Court grants Allstate's motion to dismiss the bad faith claim without prejudice as well. Mr. Lauf and Ms. Marhoefer may endeavor to replead this if they come with more facts and clearer theories as to how Allstate acted in bad faith.

## CONCLUSION

For the foregoing reasons, the Court grants Allstate's motion to dismiss Mr. Lauf and Ms. Marhoefer's Amended Complaint without prejudice. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE